UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MEDER AITMAMBETOV,<br><br>　　　　　　　　　　　Plaintiff,<br><br>-against-<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>　　　　　　　　　　　Defendant. | Civil Action No. _____<br><br>COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT<br><br><u>JURY TRIAL DEMANDED</u> |

　　　　Plaintiff Meder Aitmambetov ("Plaintiff") brings this action against defendant Equifax Information Services, LLC ("Defendant" or "Equifax"), and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

**PRELIMINARY STATEMENT**

　　　　1.　　This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq.*

　　　　2.　　Equifax issued credit reports containing inaccurate information about Plaintiff's credit history.  Although Plaintiff submitted a written dispute through Equifax's FCRA compliance division demanding the correction of the reporting, Equifax refused to process the dispute.  Instead, Equifax claimed that Plaintiff's social security number was associated with a person who is deceased, and that it could not process the dispute until Plaintiff produced a confidential benefits report from the Social Security Administration.

　　　　3.　　As discussed below, Equifax's demand for a confidential benefits report was a pretext.

1

## PARTIES

4. Plaintiff resides in Brooklyn, New York, and qualifies as a "consumer" as defined and protected by the FCRA. Plaintiff is an individual, not an entity.

5. Defendant Equifax is a Georgia corporation that maintains is principal place of business in this District. Equifax qualifies as a "credit reporting agency" under the FCRA.

## JURISDICTION AND VENUE

6. The claims asserted in this complaint arise under §§1681e and 1681i of the FCRA. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 15 U.S.C. §1681p.

7. Venue is proper in this District under 28 U.S.C. §1391(b).

## STATEMENT OF FACTS

8. Defendant Equifax has been issuing credit reports containing inaccurate payment history information about Plaintiff's Ally Financial account.

9. In July 2018, Plaintiff challenged the inaccurate reporting by submitting a written dispute through Equifax's FCRA compliance unit. The dispute letter asserted that Equifax reported inaccurate late payments for December 2018 and January 2019. It also asserted that Equifax was simultaneously reporting that Plaintiff's most recent payment was made in October 2018 *and* November 2018. Finally, the letter asserted that the Equifax credit report showed that the first delinquency on the account was in November 2018 *and* December 2018. The letter thus asked Equifax to verify the validity of the reporting, delete the misleading information, and send him a copy of the corrected credit report.

10. The receipt of Plaintiff's dispute triggered Equifax's statutory obligation to conduct an investigation and correct the reporting within 30 days.

11. Equifax acknowledged Plaintiff's dispute in a letter dated July 18, 2020. It nevertheless stated that it would not process the dispute because its internal documents reflected that Plaintiff was deceased, and stated: "[a] preliminary review of your Equifax credit file indicates that the Social Security Administration (SSA) has associated your Social Security number with a person reported as deceased."

12. The letter instructed Plaintiff to obtain a "Report of Confidential Social Security Benefit Information" from the Social Security Administration, and to submit a copy of the report to Equifax. According to the letter, Equifax required this report, and another form provided by Equifax, to clarify that Plaintiff was not deceased.

13. Plaintiff was not deceased, and Equifax had no legitimate basis for failing to comply with its statutory obligation to investigate and correct the inaccurate information it was reporting about Plaintiff.

14. Equifax has no right to Plaintiff's confidential benefits report.

15. Moreover, although Equifax claimed that Plaintiff's social security number was associated with a deceased person, it continued to sell credit reports about Plaintiff to third-parties, including Pen Federal Credit Union ("Pen Fed").

16. In or about April 2020, Plaintiff applied for credit from Pen Fed.

17. By letter dated April 30, 2020, Pen Fed informed Plaintiff that her application for credit was denied based "in whole or in part" on a credit report obtained from Equifax.

18. Like Equifax, Experian and TransUnion reported inaccurate information about Plaintiff's credit background. Plaintiff submitted written disputes to Experian's and TransUnion's respective FCRA compliance divisions. Both Experian and TransUnion responded to Plaintiff's

dispute letter in the manner prescribed by the FCRA. Neither credit reporting agency claimed that Plaintiff's social security number was associated with a deceased person.

**Equifax's FCRA Violations Were Willful, or At Least Negligent, and Harmed Plaintiff**

19. Equifax failed to conduct a reasonable investigation, and failed to maintain reasonable procedures to ensure the maximum possible accuracy of Plaintiff's credit profile. Specifically, Equifax failed to implement reasonable procedures to prevent the credit files of living consumers from becoming mixed with the credit files of deceased consumers, and refused to process Plaintiff's bona fide dispute based on the false claim that Plaintiff's social security number was associated with a deceased person.

20. Equifax's loose matching algorithms caused Plaintiff's credit profile to become combined with another consumer's credit file.

21. Equifax has been on actual notice, and has had actual knowledge for many years, that its loose matching algorithms frequently combine information about different consumers and falsely match the credit information of deceased and living individuals.

22. Equifax does not obtain information directly from the social security administration. Instead, it obtains information directly from a third party vendor.

23. Contracts for the provision of personal identifying information ordinarily contain a provision that disclaims the accuracy of social security information. Accordingly, it is reasonable to infer that Equifax's contract with its third party vendor disclaims the accuracy of social security information, and that Equifax knows that the social security information it obtains from the third party vendor might be inaccurate.

24. Yet, although Equifax knew that Plaintiff's status might be inaccurate, it nevertheless refused to investigate the veracity of the credit information it was reporting.

25. Equifax has been sued repeatedly for invoking inaccurate social security information in response to consumer disputes, instead of conducting the requisite investigations.

26. Equifax has no right to a consumer's confidential benefits report.

27. Despite the onerous requirements that Equifax imposed on the Plaintiff before it would process her dispute, Equifax readily sells consumer reports about consumers without similar requirements of its customers. For instance, Equifax sells consumer reports to its banking industry and debt collector customers with as little as a name and any previous address.

28. Equifax does not make money from conducting reinvestigations, but rather it is an expense. Therefore, Equifax purposely institutes this onerous and unjustified requirement in order to avoid reinvestigation of disputes.

29. As a result of Defendant's misconduct, Plaintiff has suffered actual damages in the form of lost credit opportunities, harm to credit reputation and credit score, and emotional distress. Accordingly, Plaintiff is entitled to statutory, actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION
### COUNT I
**Against Equifax for Violations of the FCRA, 15 U.S.C. §§1681e and 1681i**

30. Plaintiff repeats and realleges that foregoing allegations as if set forth in full herein.

31. The FCRA imposes a duty on credit reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of credit reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.
>
> 15 U.S.C. §1681e(b) (emphasis added).

32. Upon receiving a consumer's dispute, credit bureaus are legally required to conduct an investigation and correct the disputed information contained in the report, as follows:

> . . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency *is disputed by the consumer*, and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information***, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.
>
> *Id.* §1681i(a)(1).

33. Credit reporting agencies are further required to provide prompt notice of the consumer's dispute to the furnisher of the disputed information, as follows:

> (A) *In general.* **Before the expiration of the 5-business-day period** beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), ***the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person***. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.
>
> *Id.* §1681i(a)(1) (emphasis added).

34. Equifax violated §§1681e(b) and 1681(i) because it failed to follow reasonable procedures to ensure maximum possible accuracy of the information attributable to Plaintiff by reporting inaccurate information in Plaintiff's consumer background report. Plaintiff disputed the inaccurate information, and still, Equifax willfully, intentionally, recklessly, and negligently failed to perform a reasonable investigation and remove the inaccurate information.

35. Equifax's conduct was a direct and proximate cause of Plaintiff's injury. Equifax's is therefore liable to Plaintiff for its negligent and willful failures to follow reasonable policies and procedures. As a result of Equifax's violations of 15 U.S.C. §§1681e(b) and 1681i, Plaintiff

suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

1. awarding Plaintiff statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest;

2. awarding attorney's fees and costs, and other relief; and

3. awarding such other relief as to this Court may seem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 3, 2020            THE OAKS FIRM

*/s/ Misty Oaks Paxton, Esq.*
MISTY OAKS PAXTON, ESQ.
3895 Brookgreen Point
Decatur, Georgia 30034
Tel:  (404) 725-5697
attyoaks@yahoo.com

**COHEN & MIZRAHI LLP**
EDWARD Y. KROUB
DANIEL C. COHEN
MOSHE O. BOROOSAN
300 Cadman Plaza West, 12th Floor
Brooklyn, NY  11201
Telephone:  929/575-4175
929/575-4195 (fax)
edward@cml.legal
dan@cml.legal
moshe@cml.legal

*Attorneys for Plaintiff*